**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-20448
Summary Calendar

IDELL MITCHELL,

Plaintiff-Appellant,

versus

JOHN W. SNOW, Secretary of the Treasury,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:06-CV-2535

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Idell Mitchell appeals a summary judgment in her employment discrimination action against John W. Snow, Secretary of the Treasury ("the Treasury").

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We affirm.

## I.

In June 2003, Mitchell, a Treasury employee, received a score of 4.2 out of 5.0 in her yearly job performance review for the fiscal year ending in May 2003 (the "2003 review").[1] She asserts that the 2003 review constituted (1) discrimination on the basis of race and sex and (2) retaliation for an Equal Employment Opportunity ("EEO") administrative complaint she had filed nineteen months earlier, all in violation of title VII of the Civil Rights Act of 1964 ("title VII"), 42 U.S.C. §§ 2000e *et seq.* She also alleges that it amounted to (3) discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Lastly, she claims (4) that she was subject to a hostile work environment in violation of title VII.[2] The district court granted the Treasury summary judgment on all four claims.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."

---

[1] That score corresponds to a description of "exceeds fully successful" under the evaluation rubric used in Mitchell's case.

[2] Mitchell also appears to claim a hostile work environment under the ADEA. We have never held that the ADEA contemplates hostile work environment claims. *McNealy v. Emerson Elec. Co.*, 121 F. App'x 29, 34 n.1 (5th Cir. 2005). Because—assuming *arguendo* that such claims are permitted—we affirm summary judgment against Mitchell, we need not reach that question.

Mitchell's complaint included various tort claims and claims related to subsequent job performance reviews, but Mitchell withdrew them in her response to the Treasury's motion for summary judgment. They are therefore deemed waived. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[F]ailure to pursue this claim beyond her complaint constituted abandonment.*").* Mitchell also asserts claims of discrimination on the basis of color and disability. Because she raised those claims for the first time in her response to the motion for summary judgment and has not included any argument supporting them, they are not properly before this court. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

FED. R. CIV. P. 56(c). "This Court reviews grants of summary judgment de novo, applying the same standard as does a district court, viewing the evidence in a light most favorable to the non-movant." *Lauderdale v. Texas Dep't of Criminal Justice*, 512 F.3d 157, 162 (5th Cir. 2007) (quoting *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003)). We review questions of law *de novo*.

## II.

To survive summary judgment on her claims of discrimination on the basis of sex, race, and age, Mitchell had to raise a genuine issue of material fact on each element of the *prima facie* case of discrimination. *Johnson v. Louisiana*, 351 F.3d 616, 621-22 (5th Cir. 2003). Those four elements include showings that the plaintiff

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). Essentially the same framework applies to both title VII and ADEA claims. *Compare id.* (title VII) *with Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (ADEA). The district court concluded that Mitchell had satisfied the first two prongs but not the second two.

In finding that Mitchell had failed to show an adverse employment action, the district court employed the "ultimate employment decision" test that our precedents require: "[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or com-

pensating."[3] Mitchell responds that *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), abrogates that definition in favor of a broader one that more easily accommodates her lower-than-expected job performance review.

This is incorrect. The *Burlington Northern* Court held that the range of employer actions prohibited by title VII's anti-retaliation provisions is broader than the range covered by its anti-discrimination provisions.[4] "[O]ur precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for title VII discrimination claims[.]" *McCoy*, 492 F.3d at 560. The district court's statement of the law is therefore accurate.

The 2003 review itself, standing alone, plainly does not meet the ultimate-employment-decision test. Mitchell suggests, in the alternative, that the failure to award her a "step increase" in salary after the 2003 review satisfies it. The district court found no evidence connecting Mitchell's performance evaluation to her compensation, however, and Mitchell has not directed us to any. We see no evidence that the 2003 review led to her being denied a step increase, nor that a rating higher than the 4.2 she received would have qualified her for a step increase. "[I]n cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits," no adverse employment action exists. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). The district court rightly concluded that Mitchell has not shown an adverse employment action.

As for the fourth prong, Mitchell relies on differences between the midyear job performance feedback she received and that given to two of her younger,

---

[3] *McCoy*, 492 F.3d at 559 (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

[4] *Burlington N.*, 548 U.S. at 67 ("For these reasons, we conclude that title VII's substantive provision and its anti-retaliation provision are not coterminous. The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.").

male colleagues before their respective 2003 evaluations. Specifically, she claims that her midyear feedback was less "clear" and "extensive" than theirs.[5] Because we sustain the district court's finding that Mitchell failed to demonstrate any adverse employment action, we affirm the summary judgment on the discrimination claims regardless of whether Mitchell showed disparate treatment. We agree, though, with the district court that Mitchell's feedback was not materially "less favorable."

## III.

Mitchell argues that her score on the 2003 review was retaliation for a separate and unrelated EEO complaint she filed in November 2001. To establish a *prima facie* case of retaliation, Mitchell must show that "(1) [she] participated in an activity protected by title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556-57. The district court concluded that Mitchell's 2001 EEO complaint satisfied the first prong of this test but that she did not meet the second two.

For purposes of retaliation claims, an adverse employment action is one that, in context, "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 559 (quoting *Burlington N.*, 548 U.S. at 68). "[N]ormally[,] petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N.*, 548 U.S. at 68.

The district court's finding—that an employment review lower than Mitchell expected would not have dissuaded a reasonable employee from asserting discrimination—is correct. The 2003 review was still quite strong, especially relative to the accompanying comments, many of them quite critical, from Mit-

---

[5] Mitchell does not appear to assert that she was treated less favorably in the evaluation itself. The district court found no evidence to support such an assertion.

chell's supervisor. Mitchell's prior EEOC complaint had been prompted by her performance review for the fiscal year ending in May 2001, and the resolution of that complaint involved, in part, her evaluation's being significantly raised; punishing her with a lowered evaluation in 2003 would have been puzzling.

Nor does Mitchell's alleged mistreatment by her supervisors rise beyond the level of "petty slights, minor annoyances, and simple lack of good manners that employees regularly encounter in the workplace, and which the Supreme Court has recognized are not actionable retaliatory conduct." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008). Indeed, Mitchell has not presented a contrary argument on appeal as to that treatment. To the extent that she alleges more serious misconduct by her superiors, she presents no evidence in support.

The district court's conclusion that Mitchell has failed to establish the necessary causal connection between her EEO complaint and her 2003 evaluation is independently adequate to justify summary judgment. Although mere temporal proximity may be sufficient *prima facie* evidence (though not *proof*) of causation, the proximity must be close where there is no other such evidence. *See Strong v. Univ. HealthCare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

We agree that the nineteen-month delay between Mitchell's 2001 EEO complaint and her 2003 evaluation is far too distant to establish a *prima facie* case.[6] *See id.* (three and one-half months insufficient to show causation); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). We note in addition that, in the summer of 2002, Mitchell's supervisor gave her a rating of 4.8 for the

---

[6] Mitchell emphasizes, in response, that the 2001 complaint was not resolved until January 2002. Even if the relevant time period starts with resolution of a complaint, rather than with its filing, we cannot see that this helps her showing of causation significantly. Besides, the complaint appears to be the relevant starting point. *See Strong*, 482 F.3d at 807.

fiscal year ending in May 2002. It is highly implausible that the *following* year's rating, given in 2003, reflected retaliation for the *previous* year's EEO complaint.

## IV.

Mitchell reasserts her claim that she was subjected to a hostile work environment on prohibited grounds. To establish a hostile work environment under title VII, she must prove that

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on [a prohibited ground]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). To satisfy the fourth part of that test, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks omitted).

Mitchell's evidence is insufficient to establish a *prima facie* case. As the district court explained, although she satisfies the first prong, there is nothing in the record, aside from her personal claims, that she was harassed at all. Even assuming that she was harassed, she offers only her own subjective belief that it was on a prohibited ground.

Not even Mitchell herself explained why she felt that her race, sex, or age was the cause of the mistreatment she alleges. *A fortiori* there is no evidence that the harassment was severe or was ignored by her supervisors, especially considering that there is no evidence of a hostile work environment claim before Mitchell filed her complaint. "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" in op-

posing summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). The district court was therefore correct in granting summary judgment.

AFFIRMED.