# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 10-20105

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 22, 2011

Lyle W. Cayce
Clerk

DEREK CARDER, an Individual, on behalf of himself and all others similarly situated; MARK BOLLETER, an Individual, on behalf of himself and all others similarly situated; DREW DAUGHERTY, an Individual, on behalf of himself and all others similarly situated; ANDREW KISSINGER, an Individual, on behalf of himself and all others similarly situated,

Plaintiffs-Appellants

v.

CONTINENTAL AIRLINES, INC., a Delaware Corporation,

Defendant-Appellee

Appeal from the United States District Court
for the District of Texas, Houston

Before DAVIS, WIENER, and BENAVIDES,  Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Appellants, members of the United States Armed Forces Reserves and Air National Guard, are currently employed as pilots by Appellee Continental Airlines, Inc. ("Continental").  Appellants filed a class-action complaint in the district court purportedly on behalf of all similarly situated employees at Continental.  The complaint raises a number of claims against Continental under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), a statute adopted to prohibit civilian employers from

No. 10-20105

discriminating against their employees because of their military service. Appellants filed this interlocutory appeal from the district court's partial grant of Continental's motion to dismiss under Federal Rule of Procedure 12(b)(6). The district court held that Appellants failed to state a claim for a hostile work environment because USERRA does not provide for such a claim. We granted permission to appeal and for the following reasons, we affirm.

I.

Appellants' class complaint asserts several claims against Continental under USERRA. The complaint which is the focus of this appeal alleges that Continental has created a hostile work environment through "harassing, discriminatory, and degrading comments and conduct relating to and arising out of" Appellants' military service and service obligations. This count of the complaint cites a "continuous pattern of harassment in which Continental has repeatedly chided and derided plaintiffs for their military service through the use of discriminatory conduct and derogatory comments regarding their military service and military leave obligations." The factual content of this count is based primarily on Appellants' allegations that Continental management has (1) placed onerous restrictions on taking military leave and arbitrarily attempting to cancel military leave; (2) made derisive and derogatory comments to pilots about their military service. Examples of these alleged derisive comments include comments by Continental managers such as the following: "If you guys take more than three or four days a month in military leave, you're just taking advantage of the system."; "I used to be a guard guy, so I know the scams you guys are running."; "Your commander can wait. You work full time for me. Part-time for him. I need to speak with you, in person, to discuss your responsibilities here at Continental Airlines."; "Continental is your big boss, the Guard is your little boss."; "It's getting really difficult to hire you military guys

2

No. 10-20105

because you're taking so much military leave."; "You need to choose between CAL and the Navy."

Continental moved for dismissal of this hostile work environment claim under Federal Rule of Civil Procedure 12(b)(6). Continental argued that USERRA does not prohibit harassment of military members nor otherwise contemplate a hostile work environment action. The district court agreed. The district court held that the plain meaning of the phrase prohibiting the denial of any "benefit of employment" to a member of the uniformed services based on such membership or the performance of service, 38 U.S.C. § 4311(a), does not include a cause of action based on a hostile work environment.

Some of Appellants' other claims were not dismissed.[1] The district court granted certification and this court granted Appellants permission to pursue this interlocutory appeal of the district court's order dismissing the hostile work environment claim pursuant to 28 U.S.C. § 1292.

II.

"We review the district court's dismissal for failure to state a claim *de novo*." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* Questions of statutory interpretation are, of course, reviewed *de novo. United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2010).

III.

The issue in this case is whether USERRA, which was adopted to prohibit discrimination against members of the armed forces because of that service,

---

[1] These claims include (1) the claim that Continental violated USERRA by depriving class members employment benefits through discriminatory practices in the underpayment of retirement contributions, and (2) the claim that Continental denied employment to Plaintiff Andrew Kissinger and subclass members based on their military service.

No. 10-20105

provides a service member with a cause of action against his employer for a hostile work environment. This dispute narrows to an interpretation of USERRA's prohibition against denial of a "benefit of employment" on the basis of military service, as stated in § 4311(a) and further defined in § 4303(2).

We have little direct authority to guide us. "Neither the Supreme Court nor any court of appeals has decided whether a hostile work environment claim is cognizable under USERRA." *Vega-Colon v. Wyeth Pharms.*, 625 F.3d 22, 32 (1st Cir. 2010). Several circuit courts have assumed without deciding that USERRA does provide for such a claim while disposing of the claim on other grounds. *Id.* at n.9 (citing *Dees v. Hyundai Motor Mfg. Alabama, LLC*, 368 F. App'x 49, 53 (11th Cir. 2010); *Church v. City of Reno*, 168 F.3d 498 (9th Cir. Feb. 9, 1999)); *Miller v. City of Indianapolis*, 281 F.3d 648 (7th Cir. 2002). A number of district courts have reached differing conclusions on the merits.[2] Thus, we are the first circuit court to consider whether the statute creates a cause of action for hostile work environment.

A.

Statutory interpretation begins with the statute's plain language. *Waggoner v. Gonzales*, 488 F.3d 632, 636 (5th Cir. 2007). The plain language of USERRA is as follows.

Section 4311(a) of the statute (entitled "Discrimination against persons who serve in the uniformed services and acts of reprisal prohibited") states the following:

---

[2] *See, e.g., Dees v. Hyundai Motor Mfg. Alabama, LLC*, 605 F. Supp. 2d 1220, 1228 (M.D. Ala. 2009) (holding that a USERRA harassment claim is cognizable under USERRA); *Vickers v. City of Memphis*, 368 F. Supp. 2d 842, 845 (W.D. Tenn. 2005) (holding that a USERRA harassment is cognizable if based on a company employment policy); *contra Baerga-Castro v. Wyeth Pharm.*, No. 08-1014, 2009 WL 2871148, at *12 (D.P.R. Sept. 3 2009) (holding that a USERRA harassment claim is not cognizable).

No. 10-20105

A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, *or any benefit of employment* by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

(emphasis added).

In a separate definitions section, the statute defines "benefit of employment":

The term "benefit", "benefit of employment", or "rights and benefits" means any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

A different section of the statute states the purposes of USERRA:

(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
(3) to prohibit discrimination against persons because of their service in the uniformed services.

*Id*. § 4301(a)(1)-(3)

From the plain language of § 4301(3), it is clear that one of the purposes of USERRA is to prohibit discrimination and acts of reprisal against service members because of their service.  Section 4311(a) defines this discrimination

5

No. 10-20105

to include the denial of any "benefit of employment." The language of § 4303(2) defining the word "benefit" and the phrase "benefit of employment" includes the long list of terms "advantage, profit, privilege, gain, status, account, or interest." But § 4303(2) does not refer to harassment, hostility, insults, derision, derogatory comments, or any other similar words. Thus, the express language of the statute does not provide for a hostile work environment claim.

Given the statute's express prohibition of discrimination against service members, however, we must also consider the statute's legislative history and its underlying policy objectives in an attempt to gain insight into whether Congress intended to create a cause of action under USERRA for harassment of service members. *See Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004). We will also compare the language of USERRA to language from other federal anti-discrimination statutes from which courts have inferred a cause of action for hostile work environment.

B.

Appellants have pointed to segments of USERRA's legislative history stating that the statute was intended to be "broadly construed" and given an "expansive interpretation" in favor of service members. The Appellants couple this "broadly construed" language with USERRA's third express purpose—to "prohibit discrimination against persons because of their service in the uniformed services"—to argue that USERRA must be broadly construed as encompassing a hostile work environment claim in order to carry out the purpose of prohibiting discrimination against service members.

An administrative decision of the Merit Systems Protection Board ("MSPB"), *Petersen v. Department of Interior*, 71 M.S.P.R. 227 (1996), put heavy emphasis on Congress's intent that the statute should be broadly construed in

6

No. 10-20105

reaching the conclusion that USERRA allows a hostile work environment claim.[3] Some district courts have followed *Petersen* and its reliance on this legislative history to conclude that workplace harassment is actionable under USERRA. *See, e.g., Dees*, 605 F. Supp. 2d at 1227; *Vickers*, 368 F. Supp. 2d at 845.

Continental argues that even considering this legislative history, the conclusion does not necessarily follow that the term "benefits" of employment can be interpreted to include a hostile work environment claim. Continental contends that the term "benefits" cannot be construed beyond all reasonable textual meaning.

We agree with Appellants that we cannot ignore the Congressional mandate that the statute be broadly construed to prevent discrimination of service members. But we are not satisfied that this carries the day for them. We believe the analysis most likely to provide a more accurate assessment of Congress's intent on the narrow question presented to us lies in examination of the case law interpreting other anti-discrimination statutes.

C.

1.

Hostile work environment claims were first recognized in discrimination cases decided under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In originally permitting a plaintiff to assert a hostile work environment claim in a Title VII case, the Supreme Court relied heavily on Title VII's language prohibiting discrimination with respect to the "terms, conditions,

---

[3] The MSPB has jurisdiction to hear appeals of various federal agency personnel decisions. *See* 5 U.S.C. §§ 1204, 7701. Appellants have argued that the MSPB's interpretation of USERRA is not binding on this court, but merely persuasive. Because Appellants have not argued for a higher level of deference or directed us to any authority suggesting that Congress delegated authority to the MSPB to interpret USERRA through decisions having "the force of law," especially with regard to private employment, we defer to *Petersen* based only on that decision's "power to persuade." *See United States v. Mead Corp.*, 533 U.S. 218, 231-32, 121 S. Ct. 2164, 2173-74 (2001).

No. 10-20105

or privileges of employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63-66, 106 S. Ct. 2399, 2404-05 (1986).  The Court stated that "'[t]he phrase terms, conditions, or privileges of employment in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination.'" *Id.* at 66 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)).[4]  The Court further held that this broad phrase "evinces a congressional intent to strike at the entire spectrum of men and women in employment." *Id.* at 64, 106 S. Ct. at 2404 (internal quotes and citation omitted).

The *Meritor* opinion makes clear it is the word "conditions," in particular, that the Court relied on in inferring a claim for hostile work environment under Title VII.  For instance, the opinion states that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to *alter the conditions* of the victim's employment and create an abusive working environment." *Id.* at 67, 106 S. Ct. at 2405 (internal quotes and citation omitted) (emphasis added).  The Court added:  "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the *conditions* of employment to sufficiently significant degree to violate Title VII." *Id.*  (internal quotes and citation omitted) (emphasis added).

The Supreme Court has consistently applied this standard:  "'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter *the conditions* of the victim's employment and create an abusive working environment, Title VII is violated.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 368 (1993)

---

[4] The *Meritor* opinion cited extensively this court's opinion in *Rogers*, which was one of the first circuit court opinions to recognize a hostile work environment claim under Title VII and which relied on the statute's use of the phrase 'terms, conditions, or privileges" of employment.  *See Meritor,* 477 U.S. at 65-66, 106 S. Ct. at 2405.

No. 10-20105

(quoting *Meritor*, 477 U.S. at 67, 106 S. Ct. at 2405) (emphasis added); *see also Penn. State Police v. Suders*, 542 U.S. 129, 133, 124 S. Ct. 2342, 2347 (2004) ("To establish hostile work environment, plaintiffs like Suder must show harassing behavior 'sufficiently severe or pervasive to alter *the conditions* of their employment.'") (internal citations omitted) (emphasis added); *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1003 (1998) (Title VII's prohibition of harassment "forbids only behavior so objectively offensive as to alter *the 'conditions'* of the victim's employment.") (internal citation omitted) (emphasis added).

We have relied on the same phrase "terms, conditions, or privileges of employment" in other anti-discrimination statutes such as the American with Disabilities Act ("ADA") to infer a cause of action for hostile work environment. For example, in a statutory question of first impression like this one, this court interpreted the phrase "terms, conditions, or privileges of employment" used in the ADA as encompassing a claim for hostile work environment, or "disability-based harassment." *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 233-35 (5th Cir. 2001). *Flowers* drew heavily from the *Meritor* opinion and the fact that the ADA used the same language as Title VII. *Flowers* concluded that "the language of Title VII and the ADA dictates a consistent reading of the two statutes" and that "[t]herefore, following the Supreme Court's interpretation of the language contained in Title VII, we interpret the phrase 'terms, conditions, or privileges of employment' as it is used in the ADA to 'strike at' harassment in the workplace." *Id.* at 233 (quoting *Meritor*, 477 U.S. at 64, 106 S. Ct. at 2404).

 Notably, Congress passed the ADA after *Meritor*. Thus, Congress's choice to include the same phrase in the ADA that the Court relied on in *Meritor* supports the view that Congress intended to make harassment actionable under the ADA to the same extent as Title VII. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85-86, 126 S. Ct. 1503, 1513 (2006) ("[W]hen

9

'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general mater, the intent to incorporate its judicial interpretations as well.'") (quoting *Bragdon v. Abbott*, 524 U.S. 624, 645, 118 S. Ct. 2196, 2208 (1998)). Other anti-harassment statutes passed by Congress after *Meritor* have included the same or similar language from Title VII. *See, e.g.*, 18 U.S.C. § 1514A(a) (regarding civil actions to protect against retaliation in fraud cases) ("[N]o covered entity or individual may discharge, demote, suspend, threaten, *harass*, or in any other manner discriminate against an employee *in the terms and conditions of employment* because of any lawful act done by the employee . . . ."). (emphasis added).[5]

Congress initially passed USERRA in 1994, years after *Meritor* was announced. Accordingly, Congress's choice to not include the phrase "terms, conditions, or privileges of employment" or similar wording in USERRA weighs in favor of the conclusion that USERRA was not intended to provide for a hostile work environment claim to the same extent as Title VII and other anti-discrimination statutes containing that phrase. The significance that the Supreme Court has placed on this phrase—and particularly on the specific word "conditions"—cannot be ignored. If Congress had intended to create an actionable right to challenge harassment on the basis of military service under USERRA, Congress could easily have expressed that intent by using the phrase "terms, conditions, or privileges of employment" interpreted previously by the Supreme Court. *See Merrill Lynch*, 547 U.S. at 85-86, 126 S. Ct. at 1513. The fact that Congress did not do so, even though USERRA was passed after the

---

[5] The Age Discrimination in Employment Act of 1967 ("ADEA") includes the phrase "terms, conditions, or benefits." However, "[w]e have never held that the ADEA contemplates hostile work environment claims." *Mitchell v. Snow*, 326 F. App'x 852, 854 n.2 (5th Cir. 2009). We have only assumed without deciding that it does. *Id.*

No. 10-20105

*Meritor* opinion, but instead chose to use the narrower phrase "benefits of employment," indicates that Congress intended to create a somewhat more circumscribed set of actionable rights under USERRA.

We are not persuaded that use of the word "privilege" as one of many words defining "benefits of employment" in §4303(2), a separate definitions section of USERRA, is sufficient to infer a cause of action for hostile work environment. Cases interpreting Title VII have relied on that statute's use of the full phrase "terms, conditions, and privileges" or on the sole word "conditions," not on the word "privilege" alone. Neither are we persuaded by the title of § 4311(a), which specifies that the section prohibits "acts of reprisal," because acts of reprisal are primarily relevant to a claim for retaliation. *See, e.g., Randel v. United States Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998) (repeatedly describing a Title VII retaliation claim as a "reprisal claim."); *see also, e.g., Dominguez v. Miami-Dade County*, 669 F. Supp. 2d 1340, 1345 (S.D. Fla. 2009) (plaintiff's USERRA retaliation claim described as being based on employer's alleged "acts of reprisal."). Department of Labor ("DOL") regulations implementing §4311(a) of USERRA frequently refer to retaliation in such a way as to suggest the statute's prohibition on acts of reprisal relates to a retaliation cause of action. *See* 20 C.F.R. §§ 1002.18-1002.23.[6]

The term "benefits of employment" does not reflect the same broad-based Congressional intent to "strike at the heart" of all forms of harassment against employees protected under USERRA as those protected by Title VII or the ADA. This conclusion is further supported by consideration of the policies and purposes underlying USERRA. As the Seventh Circuit has noted, the primary purpose of USERRA is to "encourage people to join the reserves." *Velasquez v. Frapwell*, 160 F.3d 389, 392 (7th Cir. 1998) (Posner, J.), *vacated in part*, 165

---

[6] DOL regulations implementing USERRA with regard to private employment are further discussed below in Section C.3.

11

No. 10-20105

F.3d 593 (7th Cir. 2009). Unlike other anti-discrimination statutes which are designed in part to prevent "invidious and irrational" discrimination and harassment of "historically disadvantaged" minorities considered in need of special protections, we find nothing to indicate that Congress passed USERRA to combat this type of discrimination against military members. *Id.* There is simply "little evidence that employers harbor a negative stereotype about military service or that Congress believes they do." *Id.* Appellants have not directed this court to anything in the legislative history of USERRA that would suggest Congress believed invidious and irrational harassment of members of the military in the workplace comparable to harassment addressed by Title VII is a widespread social problem in need of a remedy.[7] Thus, based on the distinct text of USERRA, its legislative history, and its policies and purposes, we decline to infer a cause of action for hostile work environment under USERRA.

2.

We are not persuaded by the Appellants' reliance on the reasoning of the *Petersen* administrative opinion and similar district court opinions, which as noted above construed USERRA broadly to provide for hostile work environment claims. *Petersen* drew comparisons to Title IX of the Education Amendments of 1972 and the Rehabilitation Act of 1974. These are the only two federal statutes identified by the parties on appeal that lack the phrase "terms, conditions, or privileges of employment" but have been interpreted to provide for hostile work environment causes of action.[8] Both of these statutes use the word "benefits," as in USERRA. Title IX states that no person "shall, on the basis of sex, be

---

[7] At oral argument, counsel for Appellants stated his belief that Continental is the only airline engaging in the complained-of, alleged harassment of military reservist pilots. This statement provides further support for our conclusion that workplace harassment of military members is not a widespread problem that Congress intended to address with USERRA.

[8] Congress passed both statutes before the Supreme Court issued the *Meritor* opinion.

12

excluded from participation in, be denied *the benefits of*, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (emphasis added). The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied *the benefits of*, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (emphasis added).

Although courts have permitted plaintiffs to assert hostile work environment claims under these two statutes, these statutes are distinguishable from USERRA. An examination of the intent and purposes of Title IX and the Rehabilitation Act reveals that Congress intended these statutes to combat harassment of women and the disabled, respectively. The courts have interpreted each statute so as to harmonize it with a companion statute that does contain the phrase "terms, conditions, or privileges." Based on its legislative history, this court has interpreted Title IX as being intended to prohibit a wide spectrum of discrimination against women in the same manner as Title VII. *See, e.g., Lakoski v. James*, 66 F.3d 751, 757 (5th Cir. 1995) ("Title IX's proscription of sex discrimination, when applied in the employment context, does not differ from Title VII's."); *see also, e.g., Brown v. Hot, Sexy & Safer Prods.*, 68 F.3d 525, 540 (1st Cir. 1995) ("Title VII, and thus Title IX, 'strike at the entire spectrum of disparate treatment of men and women,' including conduct having the purpose or effect of unreasonably interfering with an individual's performance or creating an intimidating, hostile or offensive environment.") (quoting *Meritor*, 477 U.S. at 57, 106 S. Ct. at 2404), *superseded on other grounds*, *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708 (1998). Of course, as discussed extensively above, the Supreme Court inferred

No. 10-20105

Title VII's proscription of harassment against women from the words "terms, conditions, or privileges of employment."

Similarly, we have read the Rehabilitation Act together with the ADA in allowing a harassment claim under the Rehabilitation Act. *See Soledad v. United States Dep't of Treasury*, 304 F.3d 500, 506-07 (5th Cir. 2002). In *Soledad*, we recognized that Congress amended the Rehabilitation Act in 1992 to include "a provision that explicitly incorporates the ADA's standards governing complaints alleging employment discrimination." *Id.* at 503. As explained, the ADA includes the words "terms, conditions, or privileges of employment."

These cases construing Title IX and the Rehabilitation Act are not inconsistent with the substantial authority discussed above that premise the inference of Congress's intent to create a harassment or hostile work environment cause of action from use of the broad phrase "terms, conditions, or privileges of employment." We are also influenced by the fact that the beneficiaries of Title IX and the Rehabilitation Act, like the beneficiaries of Title VII, are members of historically disadvantaged minorities. Members of the military do not fall within such a group. This supports our conclusion that Congress's decision not to extend the broad protection to military service members against discrimination in the "terms, conditions, or privileges of employment" was not an oversight and should be given effect.

3.

As noted above, the DOL has issued regulations implementing USERRA with regard to private employers and employees. *See* 20 C.F.R. § 1002 *et seq*. USERRA provides the DOL with this authority. 38 U.S.C. § 4331(a). The DOL issued these regulations after a notice and comment period. *See* www.dol.gov/vets/regs/fedreg/final/2005023961.htm (last visited March 16, 2011). "Subpart B [of the regulations] describes USERRA's anti-discrimination

14

and anti-retaliation provisions." 20 C.F.R. § 1002.1.  The regulations in Subpart B explain in detail the DOL's informed opinion about the elements of USERRA discrimination and retaliation claims.  *Id*. §§1002.18-1002.23.  These DOL regulations make no mention whatsoever of employer harassment on the basis of military service, creation of a hostile work environment, or any other type of comparable claim.

This stands in sharp contrast to the guidelines issued by the Equal Employment Opportunity Commission expressly defining sexual harassment as a form of discrimination prohibited by Title VII to which the Supreme Court looked for guidance in *Meritor*.  *See Meritor*, 477 U.S. at 65, 106 S. Ct. at 2404. The complete lack of similar DOL regulations referring to harassment or a hostile work environment as an actionable form of discrimination under USERRA serves as additional support for our conclusion that USERRA should not be interpreted to  provide for such a cause of action.[9]

### D.

Appellants also argue that the express purposes and prohibitions of USERRA may be circumvented by employers if we do not interpret the statute as providing for a harassment cause of action. Appellants generally contend that because USERRA expressly prohibits firing and other employment decisions on the basis of military service, it would be patently inconsistent with the purpose of the statute to permit employers to accomplish indirectly via harassment what an employer cannot accomplish directly. As one district court put it, "[a]n assurance that employees cannot be fired on account of their military service is

---

[9] The lack of DOL regulations regarding harassment of private employees on the basis of military service also supports our determination that we need not defer to the opinion of the MSPB, which has authority only over federal employment.  *See supra* n. 3.  In fact, the MSPB has authority to issue regulations under USERRA that grant "greater or additional rights" to federal employees than DOL regulations governing private employees.  38 U.S.C. § 4331(a)-(b).

meaningless without assurance that the work environment will not be so intolerable that they will feel forced to quit." *Dees*, 605 F. Supp. 2d at 1227-28.

We are not persuaded by this argument. If an employer makes service members' employment so intolerable that they feel forced to quit, these service members could likely make a claim under USERRA for constructive discharge. Such claims are routinely brought under Title VII and other anti-discrimination statutes. *See, e.g., Hinojosa v. CCA Props. of Am., LLC*, No. 10-40342, 2010 U.S. App. LEXIS 22947, *5 (5th Cir. Nov. 4, 2010) (Under Title VII, "[t]o make out a claim of constructive discharge, [a plaintiff] must show that his working conditions became 'so intolerable that a reasonable person would have felt compelled to resign.'") (quoting *Penn. State. Police*, 542 U.S. at 147, 124 S. Ct. at 2354). Claims for constructive discharge have, in fact, been recognized under USERRA by other courts. *See, e.g., Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). This type of claim would be based on USERRA's clear prohibition against firing service members based on their military service. The availability of such relief would prevent an employer from circumventing the express purposes of USERRA by engaging in some intolerable form of harassment, but would not make actionable those lesser levels of harassment that usually form the basis for hostile work environment claims such as Continental's allegedly derisive comments toward Appellants.

We also note that circumvention of USERRA is difficult given the express definition of "benefits of employment" in the statute covering a wide range of employment practices and policies. To repeat, a "benefit of employment" is defined as "any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or employer, policy, plan, or practice . . . ." 38 U.S.C. § 4303(2). As the Sixth Circuit held of USERRA's predecessor statute, this definition is "derivative" and "[i]t is intentionally framed in general terms

No. 10-20105

to encompass the potentially limitless variations in benefits of employment that are conferred by an untold number and variety of business concerns." *Monroe v. Standard Oil Co.*, 613 F.2d 641, 645 (6th Cir. 1980).  Thus, this definition of "benefits of employment" covers all of the contractual benefits of Appellants' employment with Continental.

These contractual benefits may bar or limit at least some of the actions by Continental that Appellants attempt to characterize as harassment.  For example, Appellants complain that Continental has allegedly placed "onerous restrictions" on military leave.  If these allegedly "onerous restrictions" have materially affected contractual benefits of Appellants' employment, such as Appellants' opportunity to log flight hours toward participation in a retirement fund, these restrictions could constitute independent, actionable benefit denials under USERRA.  Indeed, the claims that are still pending in this suit involve these sorts of arguments by the Appellants.  The complaint includes a separate count that the district court did not dismiss for denial of retirement benefits. This separate count is seemingly based in part on Continental's alleged denial of flight time to the Appellants and other class members because of their service obligations.  Thus, there is no reason for an additional, non-textual harassment cause of action to remedy this purported benefit denial.

To be clear, nothing in this opinion alters the ability of service members to sue under USERRA for the denial of contractual benefits of their employment on the basis of military service as defined in the statute.  All that we hold is that service members may not bring a freestanding cause of action for hostile work environment against their employers.

For all of the reasons stated above, we AFFIRM the district court's order dismissing the USERRA hostile work environment claim as a matter of law and REMAND this case for further proceedings consistent with this opinion.

AFFIRMED and REMANDED.