OPINION OF THE COURT
Richard M. Platkin, J.
Defendant New York State Department of Health (DOH) moves pursuant to CPLR 3212 for partial summary judgment dismissing most, but not all, of the remaining causes of action alleged in the complaint of plaintiff Donna L.N. Wang. Plaintiff opposes the motion and cross-moves for partial summary judgment as to liability.
Background
Wang has been employed by DOH since January 2001 as a health care surveyor. Wang also serves as a member of the United States Army Reserve, and she was ordered to active military duty in spring 2008. When she returned to her DOH employment in July 2008, she alleges that she was subjected to significant, adverse changes to her work environment. According to Wang, she was assigned a greater volume of cases than other employees, given less desirable cases, and was allotted less time than others to complete assignments. Wang further alleges that she was advised that her military duty might impact upon her ability to take vacation time. In addition, she alleges harassment at the hands of three coworkers, two of whom were supervisors.
Wang claims that this allegedly hostile work environment led her to treat with a physician, with complaints of anxiety, stress, and depression. Her physician removed her from work in January 2010. At that point, Wang filed a claim for workers’ compensation benefits, claiming that her disability was due to her workplace harassment and retaliation. By decision dated November 1, 2010, the Workers’ Compensation Board upheld her claim. Wang returned to work at DOH in May 2011.
This action is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act (USERRA) (38 USC § 4301 et seq.) and Military Law § 242. The complaint demands the following relief: an injunction restraining DOH from terminating her employment; an order directing DOH to comply with USERRA; reinstatement of full benefits and seniority rights; compensation for lost wages; and an award of attorney’s fees.
*750 Legal Standard
To obtain summary judgment, a movant must establish his or her position “ ‘sufficiently to warrant the court as a matter of law in directing judgment’ ” in his or her favor (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979], quoting CPLR 3212 [b]). The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any genuine material issues of fact from the case (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). The failure to make such a showing mandates denial of the motion, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). If, however, a prima facie showing is made, the burden shifts to the party opposing the motion for summary judgment to come forward with evidentiary proof in admissible form to establish the existence of material issues of fact which require a trial (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Further, a court must view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference (see Boyce v Vazquez, 249 AD2d 724, 726 [3d Dept 1998]).
Defendant’s Motion for Summary Judgment
A. Counts I and IX
Counts I and IX of the complaint allege that Wang was subjected to a hostile work environment on account of her military service, in violation of USERRA and Military Law § 242. In seeking dismissal of these causes of action, DOH contends that neither the version of USERRA in effect at pertinent times nor section 242 make actionable a claim for a hostile work environment.
With respect to USERRA, DOH directs the court’s attention to Carder v Continental Airlines, Inc. (636 F3d 172 [5th Cir 2011]), wherein the United States Court of Appeals for the Fifth Circuit held that USERRA does not provide service members with a cause of action against an employer for a hostile work environment. Carder was (and remains) a case of first impression at the Federal Circuit Court level.[1]
*751 The Carder court began its analysis with a review of the pertinent statutory language. Pursuant to 38 USC § 4311 (a), an employer is prohibited from denying a service member “any benefit of employment” on account of military service. The version of 38 USC § 4303 (2) in effect on the date of commencement defined “benefit of employment” as follows:
“The term ‘benefit’, ‘benefit of employment’, or ‘rights and benefits’ means any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.”
In examining this language, the Fifth Circuit observed that while “ ‘benefit of employment’ includes the long list of terms ‘advantage, profit, privilege, gain, status, account, or interest[,]’ [it] does not refer to harassment, hostility, insults, derision, derogatory comments, or any other similar words” (636 F3d at 175-176). As such, the Carder court concluded that “the express language of the statute does not provide for a hostile work environment claim” (id.).
The court then considered the service members’ contention that the statute “was intended to be ‘broadly construed’ and given an ‘expansive interpretation’ ... in order to carry out the purpose of prohibiting discrimination against service members” (id. at 176). While acknowledging this congressional mandate, the Fifth Circuit reasoned that “the analysis most likely to provide a more accurate assessment of Congress’s intent” was an “examination of the case law interpreting other anti-discrimination statutes” (id. at 177).
In undertaking this examination, the Carder court attached controlling significance to the absence of “language [in USERRA] prohibiting discrimination with respect to the ‘terms, conditions, or privileges of employment’ ” (id.), a phrase which the United States Supreme Court relied upon in concluding *752 that a hostile work environment claim was actionable under title VII of the Civil Rights Act of 1964 (Meritor Savings Bank, FSB v Vinson, 477 US 57, 63-66 [1986]) and which the Fifth Circuit relied upon after Meritor to infer a hostile work environment claim under the Americans with Disabilities Act (see 636 F3d at 178). Thus,
“Congress’s choice to not include the phrase ‘terms, conditions, or privileges of employment’ or similar wording in USERRA weighs in favor of the conclusion that USERRA was not intended to provide for a hostile work environment claim to the same extent as Title VII and other anti-discrimination statutes containing that phrase” (id. at 178-179).
In so concluding, the court rejected the service members’ contention that the “use of the word ‘privilege’ as one of many words defining ‘benefits of employment’ ... is sufficient to infer a cause of action for hostile work environment,” reasoning that “[c]ases interpreting Title VII have relied on that statute’s use of the full phrase ‘terms, conditions, and privileges’ or on the sole word ‘conditions,’ not on the word ‘privilege’ alone” (id.).
While the Fifth Circuit’s careful textual analysis is not without force, this court respectfully disagrees and concludes that Congress did intend to allow a military member who is subjected to a hostile work environment on account of her military service to obtain redress under USERRA. After all, Congress adopted USERRA “to prohibit discrimination against persons because of their service in the uniformed services” (38 USC § 4301 [a] [3]). Further, as acknowledged in Carder, Congress intended for USERRA to “be ‘broadly construed’ and given an ‘expansive interpretation’ ” (636 F3d at 176).
Read in this light, the court does not share the Fifth Circuit’s view that the omission of the phrase “terms, conditions, or privileges of employment” from USERRA conclusively negates the inference of a hostile work claim. As an initial matter, “[t]he list of benefits [in USERRA] is illustrative and not intended to be all inclusive” (HR Rep 65 [I]), 103rd Cong, 1st Sess at 21 [1993]). Further, as observed by the Federal Merit Systems Protection Board, other anti-discrimination statutes lacking the phrase “terms, conditions or privileges of employment,” such as the Rehabilitation Act of 1973 (29 USC § 794) and title IX of the Educational Amendments of 1972 (20 USC § 1681), have been held to allow for hostile work environment claims (Pe *753 tersen v Department of Interior, 71 MSPR 227, 238-239, 1991 MSPB LEXIS 735, *20-25 [MSPB, July 19, 1996, docket No. NY-3443-95-0610-1-1]).
Thus, while not explicitly protecting the “terms” or “conditions” of employment from discriminatory employment actions, the version of USERRA in effect on the date of commencement did prohibit employers from discriminating against a military member with respect to any “advantage” or “privilege” arising out of the employment relationship. A broad but reasonable construction of this statutory text supports the conclusion that a service member who has been subjected to an abusive working environment that is permeated with severe or pervasive discriminatory intimidation, ridicule, and insult on account of her service to the United States military has been denied an “advantage” or “privilege” of employment, in violation of USERRA.
In fact, just eight months after the Fifth Circuit issued its decision in Carder, Congress enacted the VOW to Hire Heroes Act of 2011 (Pub L 112-56, tit II, 125 US Stat 712 [112th Cong, 1st Sess, Nov. 21, 2011]) to provide a “CLARIFICATION OF BENEFITS OF EMPLOYMENT COVERED UNDER USERRA” (id. tit II, subtit D, § 251 [improvements to uniformed services employment and reemployment rights]). Among other things, 38 USC § 4303 (2) was amended to add the phrase “terms, conditions, or privileges of employment” to the definition of “benefits of employment.” While this subsequent amendment is not necessarily a reliable indicator of Congress’s original intent, the prompt legislative response to the Carder decision does provide some measure of confirmation to the conclusion reached by examination of the text, structure and purpose of USERRA (see United States v Andrino-Carillo, 63 F3d 922, 925 [9th Cir 1995]).[2]
As to plaintiffs claim under Military Law § 242, the statute recites, in pertinent part:
“Employment rights. Time during which a public officer or employee is absent pursuant to the provisions of subdivisions two, three, and three-a of this section shall not constitute an interruption of *754 continuous employment and, notwithstanding the provisions of any general, special or local law or the provisions of any city charter, no such officer or employee shall be subjected, directly or indirectly, to any loss or diminution of time service, increment, vacation or holiday privileges, or any other right or privilege, by reason of such absence, or be prejudiced, by reason of such absence, with reference to continuance in office or employment, reappointment to office, re-employment, reinstatement, transfer or promotion.” (§ 242 [4].)
In construing the anti-discrimination provisions of the New York State Human Rights Law, the Court of Appeals has looked to the standards of recovery established under title VII and other federal statutory counterparts, reasoning that state and federal claims of discrimination ought be resolved consistently wherever reasonably possible (Matter of Aurecchione v New York State Div. of Human Rights, 98 NY2d 21, 25 [2002]). Here, section 242 is substantively and textually similar to USERRA and is intended to serve the same remedial objective. As DOH offers no persuasive basis for concluding that a workplace free of pervasive or severe discrimination on account of military service should not be considered a “right” or “privilege” of employment that also is protected under state law, the court concludes that a claim for hostile work environment is actionable under section 242.
B. Counts II and X
DOH moves for summary dismissal of Wang’s claim that she was denied vacation benefits in violation of USERRA (count II) and section 242 (count X), arguing that Wang’s own admissions establish that she was not denied leave time. In opposition, Wang acknowledges that her requests for vacation time ultimately were granted, but complains of additional scrutiny and delay. As Wang was not denied vacation or leave time, which is the gravamen of these causes of action, counts II and X of the complaint are dismissed.
C. Counts III and XI
DOH also seeks dismissal of Wang’s claim that she was denied “the benefit of earning mileage reimbursement for traveling to and from work assignments when DOH assigned Wang less desirable cases with little mileage reimbursement,” allegedly in violation of USERRA (count III) and section 242 (count XI). As articulated in the affidavit of Elizabeth W. Aliberti, a human re *755 sources manager with DOH, mileage reimbursement is not an independent benefit of employment, but rather a means of compensating employees for their use of gasoline and the wear and tear on their vehicles when required to travel for work. Even accepting the truth of Wang’s assertion that “[a]n employee who is economical with her gas consumption and wear and tear on her vehicle can in fact receive a financial benefit when they receive the $.51/per mile reimbursement,” the court concludes that this type of speculative milage arbitrage cannot reasonably be considered a protected benefit of employment. Accordingly, counts III and XI are dismissed.
D. Counts V and XIII
DOH also moves for dismissal of Wang’s claim that “she was denied the benefit” of earning additional income on weekends when she was removed from the “on-call” list, in violation of USERRA (count V) and section 242 (count XIII). It is DOH’s contention that Wang cannot establish that her collective bargaining agreement entitled her to be on the “on-call” list and, in any event, she was not qualified at pertinent times to be on the on-call list. In support, DOH submits the affidavit of David C. Brittain, M.D., the director of the Central New York Regional Office of the New York State Department of Health, who avers, in pertinent part:
“2. This office maintains a Long Term Care (LTC) hotline which the public can call at any time to leave messages with allegations of neglect, abuse, or mistreatment.
“3. I have spoken with the current acting LTC program director and the current complaint program manager. None of the LTC complaint program managers during which hotline changes took place are current Health Department employees. Neither of the two individuals I spoke with, nor I recall seeing any formal policies documenting these changes .... Below is the history to the best of my understanding.
“4. When Ms. Wang initially joined the Long Term Care team, we believe multiple LTC investigators shared in the responsibility of checking the hotline on weekends.
“5. We believe that prior to August, 2008 (during the tenure of Mark Alvord as complaint program manager), the decision was made to have only staff of grade 22 and above share the responsibility of *756 checking hotline calls on weekends.
“6. During the tenure of Brenda Twomey as complaint program manager (2008 - July 2010), Ms. Twomey continued Mr. Alvord’s practice of having only staff of grade 22 and above check the hotline calls on weekends. At some point, Ms. Twomey took on this duty herself, with no compensation.
“7. Beginning in September 2010, the central office in Albany had taken over the responsibility for checking the hotline . . . .”
The court concludes that DOH has failed to meet its burden of demonstrating its prima facie entitlement to judgment as a matter of law on these claims. DOH does not submit the collective bargaining agreement upon which its argument is based, and much of Dr. Brittain’s affidavit is hearsay. Moreover, DOH’s submission fails to affirmatively demonstrate that Wang’s military service was not a motivating factor. In view of DOH’s failure to meet its initial burden, the sufficiency of plaintiffs opposition papers is of no moment (Serrano v Canton, 299 AD2d 703, 705 [3d Dept 2002]).
E. Counts VI, VII, and XV
Finally, DOH moves for summary judgment regarding Wang’s alleged termination from employment, in violation of USERRA (counts VI and VII) and section 242 (count XV). As Wang acknowledges that she still is employed by DOH, defendant is entitled to summary judgment with regard to those counts. Plaintiffs Motion for Summary Judgment
Wang moves for partial summary judgment, contending that the issue of DOH’s liability for discrimination has already been litigated before the New York State Workers’ Compensation Board (WCB) and is entitled to preclusive effect under the doctrine of collateral estoppel.
“Collateral estoppel, or issue preclusion, ‘precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party’ ” (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349 [1999], quoting Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]). “The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action” (id.). “[T]he burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the *757 issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in [the] prior action or proceeding” (Ryan, 62 NY2d at 501; see Auqui v Seven Thirty One Ltd. Partnership, 20 NY3d 1035 [2013]).
In support of her motion, Wang argues that in upholding her claim for workers’ compensation benefits, the WCB
“credit[ed] [her] testimony that she was singled out and harassed due to her military service, and that her supervisor retaliated against her because she took military leave in 2008. The actions that were taken by [her supervisor] in retaliation for the claimant’s military service do not fall under the ‘lawful personnel decision’ exclusion of Section 2 (7) because the actions were not taken in good faith.”
The WCB further determined, according to Wang, “that [she] was exposed to a pattern of harassment and retaliation due to her Army Reserves service and to an increased level of stress based on the implementation and/or enforcement of work rules that changed her work conditions.”
The court finds Wang’s invocation of the doctrine of collateral estoppel to be unavailing. Adjudication of a discrimination claim under USERRA requires application of “a two-pronged burden-shifting analysis” (Mock v City of Rome, 851 F Supp 2d 428, 432 [ND NY 2012]). Once the plaintiff meets her initial burden of demonstrating by a preponderance of the evidence that her military status was a substantial or motivating factor in the challenged employment actions, the employer may escape liability by demonstrating as an affirmative defense that it would have made the same decision without regard to such status (id.). The WCB did not apply this type of burden shifting analysis or accord DOH the opportunity to present the aforementioned affirmative defense. Rather, the issue before the WCB was whether Wang “suffered a work-related injury” in a “controverted claim for stress, depression and anxiety” and, if so, whether the claimed injury was “a direct consequence of a lawful personnel decision involving a disciplinary action, work evaluation, job transfer, demotion, or termination taken in good faith by the employer” (Matter of DePaoli v Great A & P Tea Co., 94 NY2d 377, 380 [2000]; see Workers’ Compensation Law § 2 [7]). As plaintiff has failed to demonstrate that the issue adjudicated by the WCB is identical in all respects to that before this court, her reliance on the doctrine of collateral estoppel must be rejected.
*758 Conclusion
Accordingly,[3] it is ordered that defendant’s motion for partial summary judgment is granted to the extent that the second, third, sixth, seventh, tenth, eleventh, and fifteenth causes of action are dismissed and denied in all other respects in accordance with the foregoing; and it is further ordered that plaintiffs motion for partial summary judgment on liability is denied in its entirety.

. Other circuit courts have assumed without deciding that USERRA provides for a hostile work environment claim, and federal district courts presented with the issue have reached differing conclusions. (See e.g. Dees v Hyundai Motor Mfg. Ala., LLC, 605 F Supp 2d 1220, 1228 [MD Ala 2009] *751 [cognizable]; Vickers v City of Memphis, 368 F Supp 2d 842, 845 [WD Tenn 2005] [cognizable if based on employment policy]; Baerga-Castro v Wyeth Pharms., 2009 WL 2871148, *12, 2009 US Dist LEXIS 80388, *33-36 [D PR Sept. 3, 2009, Civ No. 08-1014 (GAG/JA)] [not cognizable].)

. In view of the court’s conclusion that a hostile work environment claim is actionable under USERRA, it need not examine the merit of Wang’s alternative argument that DOH’s “Administrative Policy and Procedures Manual” establishes a non-hostile workplace as a protected “benefit of employment” (see Vickers v City of Memphis, 368 F Supp 2d 842, 844-845 [WD Tenn 2005]).

. The court has considered the parties’ remaining arguments and contentions and finds them to be without merit or unnecessary to disposition of the pending motions.