United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 17, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-30305
Summary Calendar
_____

NEWTON MCNEALY

   Plaintiff - Appellant

 v.

EMERSON ELECTRIC COMPANY, doing business as Fisher Service
Company

   Defendant - Appellee

_____

Appeal from the United States District Court
for the Middle District of Louisiana
No. 02-CV-425-B

_____

Before KING, Chief Judge, and JOLLY and CLEMENT, Circuit Judges.

PER CURIAM:[*]

 Newton McNealy, Plaintiff-Appellant, is an African American
employed by Defendant-Appellee Emerson Electric Co. d/b/a Fisher
Service Company. McNealy sued Fisher alleging that he was
discriminated against on the basis of race and age and that he
was subjected to a hostile work environment. The district court
dismissed McNealy's claims on summary judgment. We AFFIRM.

## I. BACKGROUND

_____

 [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

- 1 -

## A.    Factual Background

Plaintiff-Appellant Newton McNealy, an African American born in 1955, is employed by Defendant-Appellee Emerson Electric Co. d/b/a Fisher Service Company ("Fisher") as a machinist in its Gonzales, Louisiana facility.  Fisher designs, manufactures, distributes, and services various types of industrial valves for use in the petrochemical industry.  Fisher employs approximately thirteen machinists at its Gonzales facility.  The machinists work in either the repair division or the Encore division.  The repair division services and repairs Fisher valves.  The Encore division, which was created in 1998, reconditions third-party manufactured valves to Fisher's specifications for resale.  Only a handful of the machinists work in the Encore division, while the remainder, including McNealy, work in the repair division.

McNealy began working for Fisher in 1987 as a machinist on the night shift.  In 1994, McNealy submitted a bid for a non-machinist position on the day shift.  After he bid, McNealy was told that the new position paid substantially less than he was making as a machinist.  McNealy made clear that he was nevertheless interested in the job.  Fisher eventually selected McNealy for the position.  However, on what would have been his first day in his new position, McNealy informed his supervisors that he was no longer willing to accept the reduced pay of the new position.  Fisher allowed McNealy to return to his old job at

his old rate of pay.

In March 1998, McNealy was transferred to the day shift. In June 1998, Fisher created the Encore division. Eric Kitto, the general manager of the Gonzales facility, informed the machinists that two positions would be available in the new Encore division, and that they could submit bids to transfer if they were interested. McNealy submitted a bid to transfer, but Fisher awarded the two available positions, which paid a salary similar to what McNealy was then earning, to two of its other employees whose skills were allegedly comparable to those of McNealy and who had more seniority with the company. In December 2000, Fisher again had an opening in the Encore division. This opening, however, was for a position that paid substantially less than what McNealy was earning. McNealy nevertheless applied for the position. After Kitto met with McNealy to make sure he understood that the new position was at a lower pay rate, McNealy withdrew his application. Later that month, Fisher posted two more openings in the Encore division, but McNealy was not considered for these positions because the salary being offered was substantially lower than what he was then earning and because these positions called for experience McNealy did not possess.

In March 2001, McNealy informed Mark Bourgeois, his supervisor, that Fisher was unlawfully dumping potentially hazardous waste. Subsequently, in April 2001, McNealy applied

for an open machinist position in the Encore division.  This position involved the same basic job duties he held in the repair division and would have maintained his pay at the same rate. Kitto chose a white employee, Lloyd Young, for the position because Young had been with the company eleven more years than McNealy.  Around the same time, McNealy bid for two other machinist openings in the Encore division.  Again, these positions paid less than what McNealy was then earning.  McNealy seemingly believed that he would be able to make up the pay differential through overtime.  McNealy subsequently removed his name from consideration when Kitto presented him with calculations showing McNealy that he could not make up the gap through overtime.

To meet Fisher's manpower needs, in August 2002, McNealy was temporarily transferred to the Encore division.  His pay was unaffected by the move.  In November of that year, McNealy was reprimanded twice for work-related issues.  He soon requested to be transferred back to the repair division, but the request was denied since Fisher still needed his services in the Encore division.  In April 2003, following an altercation with a co-worker, McNealy was suspended without pay for two weeks and was moved back to the repair division.  Because of the disciplinary action, McNealy was prohibited from ever securing a permanent position in the Encore division.

- 4 -

**B. Procedural Background**

On April 30, 2002, McNealy filed suit against Fisher in the United States District Court for the Middle District of Louisiana. McNealy's complaint alleged that Fisher: (1) discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (2000), 42 U.S.C. § 1981 (2000), and LA. REV. STAT. ANN. § 23:301 (West 1998); (2) created a hostile work environment in violation of 42 U.S.C. § 2000e et seq. (2000), 42 U.S.C. § 1981 (2000), and LA. REV. STAT. ANN. § 23:301 (West 1998); (3) discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. (2000); (4) retaliated against him in violation of Louisiana's environmental whistleblower statute, LA. REV. STAT. ANN. § 30:2027 (West 2000); and (5) committed the tort of intentional infliction of emotional distress, LA. CIV. CODE ANN. art. 2315 (West 1997).

In August 2003, upon completion of discovery, Fisher moved for summary judgment on all claims. On February 26, 2004, the district court dismissed each of McNealy's federal claims with prejudice. The district court declined to exercise supplemental jurisdiction over McNealy's state law claims, and it thus dismissed them without prejudice. McNealy now appeals the district court's dismissal of his federal claims and of his state

law claim under the whistleblower statute.

## II.   STANDARD OF REVIEW

### A.    Summary Judgment Standard of Review

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court. Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).  Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The initial burden to demonstrate the absence of a genuine issue of material fact is on the movant. Celotex, 477 U.S. at 324.  Upon showing that there is an absence of evidence to support an essential element of the non-movant's case, the burden shifts to the non-movant to establish that there is a genuine issue of material fact in dispute.  Id.

### B.    The McDonnell Douglas Framework

The burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), governs McNealy's race and age discrimination claims.  See Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004) (stating that Title VII's burden-shifting framework also applies to claims made under the ADEA and § 1981).  Under the McDonnell Douglas approach, the plaintiff has the initial burden of proving a prima facie case by a preponderance of the evidence.  McDonnell

Douglas, 411 U.S. at 802.  To state a prima facie case for discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone not of the protected class or that others similarly situated were more favorably treated.  See, e.g., Okoye v. Univ. of Tex. Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001). For the purposes of proving the prima facie case, an adverse employment action must be "[a] tangible employment action constitut[ing] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802.  If the defendant proffers a legitimate reason, the burden shifts back to the plaintiff to show that the defendant's reason was merely a pretext for discrimination.  Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 138-42 (2000)).  Throughout, the ultimate burden of persuasion remains with the plaintiff.  Reeves, 530

- 7 -

U.S. at 143.

### III.  ANALYSIS

### A.  Race and Age Discrimination Claims

The district court found that none of the transfers denied to McNealy was actionable.  The district court first found that McNealy's claims relating to his failure in 1998 to secure one of the two open machinist positions in the Encore division were time-barred.  McNealy had argued in district court that the continuing tort doctrine rescued his 1998 claims.  However, the court found the doctrine inapposite, and it thus dismissed McNealy's 1998 claims without reaching their merits.  As for the other denied transfers, the district court found that because the new positions all paid either the same or less than what McNealy was earning at the time, he did not suffer an adverse employment action.

On appeal, McNealy argues that the district court misapplied Louisiana's continuing tort doctrine.  He also argues that there is a genuine dispute as to whether the denied transfers were adverse employment actions.  Specifically, he argues that he sought out employment in the Encore division because he thought he would have better chances for career advancement and more opportunity to earn overtime.  It thus seems that in McNealy's view, the transfers would have been a promotion.  It has been clearly recognized that a failure to promote can be an adverse

- 8 -

employment action under the <u>McDonnell Douglas</u> framework.  <u>See</u> <u>Ellerth</u>, 524 U.S. at 761.  Thus, we must query whether McNealy has pointed to evidence raising an issue of fact as to whether the denied transfers really would have amounted to a promotion.

There is nothing in the record to suggest that a transfer to the Encore division would have placed McNealy on a different career path.  All that has been established is that the prospective positions would have either paid the same or substantially less than what McNealy was earning at the time and that, irrespective of any transfers, he would be doing the same work in either the repair division or the Encore division.  Thus, rather than being a promotion, at best, a transfer to the Encore division would have been a lateral transfer.  It is well-established that a lateral transfer cannot form the basis of an adverse employment action.  <u>See, e.g.</u>, <u>Burger v. Central Apartment Mgmt., Inc.</u>, 168 F.3d 875, 879 (5th Cir. 1999) ("We disagree with [the plaintiff's] argument that the denial of his request for a purely lateral transfer constitutes an 'ultimate employment action.'").

Finally, we need not address McNealy's arguments regarding the continuing tort doctrine because even if we assume, arguendo, that the district court's decision on this issue were in error, the denied transfer in 1998 is no different than any of the other denied transfers.  At best, it would have been a lateral transfer

and, as such, is not an adverse employment action.

**B.   Hostile Work Environment Claim**

To establish a hostile work environment claim[1], a plaintiff must prove that: (1) he is in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his status as a member of the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action.  Celestine v. Petroleos de Venez. SA, 266 F.3d 343, 353 (5th Cir. 2001).  The Supreme Court has stated that harassment affects a term or condition of employment when it is so severe that it alters the conditions of the victim's employment and creates an abusive working environment.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (U.S. 1993).

In rendering its judgment, the district court noted that McNealy did not address Fisher's summary judgment arguments regarding his hostile work environment claim.  The court chose not to address Fisher's argument that McNealy abandoned his

---

[1]      McNealy alleged in his complaint that Fisher created a hostile work environment because of both his race and his age. The district court noted that the Supreme Court and this court have yet to definitively state whether the hostile work environment framework extends to claims under the ADEA.  However, the district court found that it did not need to address this issue since McNealy presented no evidence of harassment.  For similar reasons, we assume, arguendo, that the hostile work environment framework extends to claims under the ADEA.

hostile work environment claim, since it found that the claim could be disposed of on other grounds. Specifically, the district court noted that McNealy produced no evidence of any harassment that altered the conditions of his employment. On appeal, McNealy does nothing more than assert that he can establish a claim for hostile work environment. However, he does not draw our attention to any relevant evidence that the district court overlooked. Further, we find no such evidence of harassment in the record. Accordingly, we find that the district court's grant of summary judgment as to McNealy's hostile work environment claim was proper.

## C.    Whistleblower Statute Claim

The district court declined to exercise supplemental jurisdiction over McNealy's whistleblower claim, as well as over his other state law claim. Accordingly, the court dismissed both claims without prejudice. The decision not to exercise supplemental jurisdiction is reviewed on an abuse of discretion standard. <u>Sibley v. Lemaire</u>, 184 F.3d 481, 490 (5th Cir. 1999). Rather than argue that the district court somehow abused its discretion, McNealy instead attempts to argue the merits of his whistleblower claim. Because McNealy offers no argument as to how the district court abused its discretion, and since we see no abuse of discretion ourselves, we affirm the district court's dismissal of McNealy's whistleblower claim.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.