# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 12, 2011

No. 10-30767

Lyle W. Cayce
Clerk

MILAN DEDIOL

Plaintiff - Appellant

v.

BEST CHEVROLET, INCORPORATED;
DONALD CLAY

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH and STEWART, Circuit Judges.[1]

CARL E. STEWART, Circuit Judge:

Plaintiff-Appellant Milan Dediol ("Dediol") appeals the district court's grant of summary judgment for his former employer, Defendant-Appellee Best Chevrolet, Incorporated ("Best Chevrolet"), on his claims of hostile work environment and for constructive discharge. Because we find genuine issues of material fact, we REVERSE AND REMAND.

---

[1] This case is being decided by quorum due to the death of Judge William L. Garwood on July 14, 2011. 28 U.S.C. § 46(d).

No. 10-30767

## I.

Dediol was employed at Best Chevrolet from June 1, 2007, until August 30, 2007. During his tenure, he worked directly under Donald Clay ("Clay"), Best Chevrolet's Used Car Sales Manager. Dediol was 65 years old during his employment with Best Chevrolet, and he was also a practicing born-again Christian. Dediol alleges that, on July 3, 2007, friction surfaced between him and Clay when he requested permission to take off from work for the next morning—July 4, 2007—to volunteer at a church event. Dediol received permission from Clay's assistant manager, Tommy Melady ("Melady"), but Clay overruled Melady in derogatory terms. Dediol alleges that Clay told him, "You old mother******, you are not going over there tomorrow" and "if you go over there, [I'll] fire your f*****g ass."

Dediol claims that after his request to take off from work for the morning of July 4th, Clay never again referred to him by his given name, instead calling him names like "old mother******," "old man," and "pops." Clay would employ these terms for Dediol up to a half-dozen times a day from on or around July 3, 2007, until the end of his employment. Dediol also claims that "[Clay] stole a couple of deals from me[,]" and directed them towards younger salespersons.

According to Dediol, Clay also began to make comments related to Dediol's religion. Examples of these comments include "go to your God and [God] would save your job;" "God would not put food on your plate;" and "[G]o to your f****ng God and see if he can save your job." Clay disparaged Dediol's religion approximately twelve times over the two months leading up to Clay's departure from Best Chevrolet. At one point, Clay instructed Dediol to go out to the lot to make sales by saying, "Get your ass out on the floor." Dediol responded to this instruction by stating he was busy reading the Bible. To this, Clay responded "Get outside and catch a customer. I don't have anybody in the lot. Go get outside."

2

No. 10-30767

Clay also allegedly provoked fights with Dediol. On many occasions, there were incidents of physical intimidation and/or violence between Clay and Dediol. According to Dediol, Clay would threaten him in a variety of ways, including threats that Clay was going to "kick [Dediol's] ass." On one occasion, Clay took off his shirt, and stated to Dediol, "You don't know who you are talking to. See these scars. I was shot and was in jail."

Much of the complained-of conduct occurred in front of Melady. According to Dediol, by the end of July 2007, he requested permission from the acting General Manager (and New Car Manager), John Oliver ("Oliver"), to move to the New Car Department. To wit, Dediol also repeated the offending language in front of Oliver in the days leading up to, and when he made his request to change departments. Dediol avers that his request was precipitated by Clay's conduct. This request was preliminarily approved by Melady. Yet, when Clay learned of Dediol's request, Clay denied Dediol's transfer and stated, "Get your old f*****g ass over here. You are not going to work with new cars."

Tensions escalated and reached a climax at an office meeting on August 29, 2007. During an increasingly volatile exchange, Clay proclaimed, "I am going to beat the 'F' out of you," and "charged" toward Dediol in the presence of nine to ten employees. Dediol continued working the balance of that day and the next. Allegedly, the next day, Dediol grew tired of his employment at Best Chevrolet and working under Clay. In a subsequent meeting with managers, Dediol stated, "I cannot work under these conditions—you are good people, but I cannot work under these conditions. It's getting too much for me." Dediol stopped coming to work after August 30, 2007, after which he was terminated for abandoning his job. Dediol filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and he received his Right-To-Sue letter from the EEOC on July 8, 2008.

No. 10-30767

On August 22, 2008, Dediol filed suit in the Eastern District of Louisiana alleging the following claims: hostile work environment based on age, religion harassment and constructive discharge, and state law claims of assault, stemming from the August 29, 2007 incident. Best Chevrolet and Clay filed a motion for summary judgment, which the district court granted on July 20, 2010. Dediol timely appealed.

## II.

### A.

Summary judgment is appropriate where, considering all the allegations in the pleadings, depositions, admissions, answers to interrogatories, and affidavits, and drawing inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial. *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). This court reviews the grant of summary judgment de novo. *Floyd v. Amite Cnty. Sch. Dist.,* 581 F.3d 244, 247 (5th Cir. 2009). We apply the same legal standards that the district court applied to determine whether summary judgment was appropriate. *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005).

### B.

#### 1.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, [age] or national origin." 42 U.S.C.A. § 2000e–2(a)(1). The phrase

4

No. 10-30767

"terms, conditions, or privileges of employment" includes requiring people to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). For conduct to be actionable, it needs to be sufficiently "severe or pervasive." *Harvill v. Westward Comms., LLC,* 433 F.3d 428, 434–35 (5th Cir. 2005) (discussing Title VII discrimination in the sexual harassment context). Title VII has long been a vehicle by which employees may remedy discrimination they believe creates a hostile work environment. *Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971). In *Rogers*, this court was the first to recognize Title VII as a cause of action available to address a hostile work environment. *Id.* There, we considered an employee of Spanish origin who sought to address the employer's "practice of creating a working environment heavily charged with ethnic . . . discrimination." *Id.* at 238.

We have never before held that Title VII can be extended to address a claim for hostile work environment based on age but have considered the contention on two prior occasions. In *Mitchell v. Snow*, we considered the claim of an employee of the United States Department of the Treasury. 326 F. App'x 852, 854 (5th Cir. 2009). Following a yearly job-performance review, Mitchell brought suit claiming, *inter alia*, that her performance review amounted to discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"). In *Mitchell*, we affirmed a district court's grant of summary judgment in favor of the Treasury on the grounds that Mitchell had not satisfied her burden of production. We did not reach the question of whether a claim for hostile work environment under the ADEA was viable in this circuit.

This was also our posture in *McNealy v. Emerson Elec. Co.*, 121 F. App'x 29, 34 n.1 (5th Cir. 2005). In *McNealy*, we affirmed a district court's grant of summary judgment in favor of an employer and rejected all of plaintiff McNealy's claims. *Id.* There, too, we assumed *arguendo* the existence of a hostile work environment claim under the framework of the ADEA. *Id.* In both

*Mitchell* and *McNealy*, we considered a plaintiff's age-based hostile work environment claim and affirmed the summary judgment of the district court in favor of the employer, without ever expressly adopting a cause of action for hostile work environment based on the ADEA.

At least one sister circuit has explicitly applied Title VII to a hostile work environment cause of action under the ADEA. *Crawford v. Medina General Hosp.*, 96 F.3d 830, 834–835 (6th Cir. 1996).  Moreover, two other circuits have considered claims of age discrimination in a manner similar to our disposition in *Mitchell* and *McNealy*.  *See Sischo-Nownejad v. Merced Cmty. Coll. Dis.*, 934 F.2d 1104, 1109 (9tb Cir. 1991); *Young v. Will Cty. Dep't of Pub. Aid*, 882 F.2d 290, 294 (7th Cir. 1989).

In *Crawford*, the Sixth Circuit held that a claim for hostile work environment is cognizable under the ADEA.  96 F.3d at 835.  The *Crawford* Court reasoned that the ADEA and Title VII share common substantive features and also a common purpose: "the elimination of discrimination in the workplace." *Id.* at 834.  The Sixth Circuit explained its decision this way: "the broad application of the hostile-environment doctrine in the Title VII context; the general similarity of purpose shared by Title VII and the ADEA; and the fact that the Title VII rationale for the doctrine is of equal force, all counsel" the result that a claim for hostile work environment based on age is recognized under Title VII. *Id.*  We adopt the Sixth Circuit's reasoning here.

We now hold that a plaintiff's hostile work environment claim based on age discrimination under the ADEA may be advanced in this court.  A plaintiff advances such a claim by establishing that (1) he was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Id.* at 834–35.

No. 10-30767

In order to satisfy the third element of a prima facie case of hostile work environment, a plaintiff must demonstrate that the harassment was objectively unreasonable. *Id.* A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Alaniz v. Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). Moreover, the complained-of conduct must be both objectively and subjectively offensive. *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007). This means that not only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. *Id.* To determine whether conduct is objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

**2.**

Having established that a discrimination claim for hostile work environment based on the ADEA may be pursued in this circuit, we next consider, based on the record below, whether the district court's grant of summary judgment in favor of Best Chevrolet was in error. We conclude that it was.

Here, Dediol's age satisfies the first prong of the ADEA/hostile work environment framework. Similarly, Dediol satisfies the second prong of the analysis. Dediol asserts various incidents, many of which were witnessed by Melady, which he claims were harassment. He was called names like "old mother******," "old man," and "pops." He also claims that after his request for time off on July 4, Clay never used Dediol's given name to refer to him but instead only called him by these insults. These allegations satisfy the second element. Moreover, as stated above, the record indicates that Dediol was called

7

these names a half-dozen times daily from early July until the conclusion of his tenure at Best Chevrolet.

Here, the third factor is critical. In order to successfully challenge the district court's summary judgment against him, Dediol must establish a genuine issue of material fact that the conduct was both objectively and subjectively offensive. *WC&M*, 496 F.3d at 399. Here, the comments were subjectively offensive, as evidenced by Dediol's reaction in the workplace and ultimately by his leaving the car dealership.

Our discussion of objective offensiveness concerns a consideration of the totality of the circumstances. *Id.* Here, the comments were frequent, when compared to the complained of conduct in *WC&M*. In that case, this court reversed the district court's grant of summary judgment for a defendant-employer. *Id.* A panel of this court held that a plaintiff-employee of Indian descent, who worked as a car salesman for defendant, had been subject to national origin discrimination based on comments made "multiple times a day." *Id.* at 396. The plaintiff in *WC&M* was called names like "Taliban" on the day of and those immediately following the September 11, 2001, terrorist attacks on New York and Washington, D.C. He also tolerated implications that he was involved in the attacks. *Id.* at 396–97.

Furthermore, when considered against *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806–08 (5th Cir. 1996), Dediol's complaint of frequently harassing comments satisfies the first prong of the *WC&M* framework to determine whether a work environment was objectively offensive. In *Farpella-Crosby*, this court found frequency based on sexually harassing comments two to three times a week for six months. 97 F.3d at 806–08. Yet, pursuant to *Harvill*, 433 F.3d 434–35, the question for the court at this phase of the proceedings is whether the relationship between the frequency of the comments

No. 10-30767

and their severity created a genuine issue of material fact precluding summary judgment.  We conclude that it did.

This court in *WC&M* held that a "continuous pattern of much less severe incidents can create an actionable claim."  *WC&M,* 496 F.3d at 400.  Put differently, the required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.  *Id.*  Here, the half-dozen daily times of remarks here support an actionable claim for age harassment. Yet,  for Dediol to continue, he must establish that the comments were in and of themselves severe or pervasive.

The district court and the Appellees cite *Moody v. United States Sec'y. of Army*, 72 F. App'x 235, 239 (5th Cir. 2003), in support of the grant of summary judgment against Dediol.  *Moody* is not dispositive of the instant appeal.  In that case, Pearl Moody, aged 62, alleged that her supervisor harassed her for several years based on her age; refused to give her a promotion or reevaluate her job; and, that he refused to upgrade her pay scale to reflect the work she was actually doing.  *Id.* at 237.

In a nonprecedential opinion, a panel of this court concluded that Moody had failed to establish a prima facie case of discrimination, under the familiar framework articulated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). When Moody failed this benchmark, the court examined her direct evidence of age discrimination. *Moody*, 72 F.App'x at 238.  Within that procedural context, the court considered her assertions that between August 1997 and September 1998, Moody's supervisor uttered the following statements: "Granny, have you not got anything to do?"; "See that old woman and she will take care of you."; "Old woman, when are you going to retire and go home so someone younger can have a job?"; and, "Granny, when are you going to retire and let someone younger have a job?" *Id.* at 238–39.

This court held that Moody failed to show that these remarks were proximate in time to any employment action, and that the remarks did not evince a hostile work environment under governing law. *Id.* at 239. In contrast, the summary judgment record before us is quite distinct from that presented to the court in *Moody*. Here, Clay's repeated profane references to Dediol, and the strident age-related comments about Dediol used by Clay on almost a daily basis within the work setting, are sufficient to create a genuine issue of material fact concerning Dediol's ADEA-based claim for hostile work environment discrimination.

Dediol also presented evidence indicating that workplace conduct was physically threatening or humiliating. 496 F.3d at 399. Here, the record is replete with incidents of physically threatening behavior by Clay towards Dediol. First, Clay "charged" at Dediol at a staff meeting on August 29, 2007. Second, Clay would often threaten to "kick [Dediol's] ass." Next, Clay allegedly removed his shirt, and stated to Dediol, "You don't know who you are talking to. See these scars. I was shot and was in jail." The tenor of these comments and physical actions support the inference that the conduct was physically threatening.

The last prong of the *WC&M* objectively offensive analysis requires the court to consider whether the harassment interfered with Dediol's work performance. Dediol claims that because of his age, Clay steered certain deals away from him and towards younger salespersons. On this issue, the facts are conflicting, and better suited for resolution by a trier of fact.

While hostile work environment jurisprudence is not designed to "prohibit all verbal or physical harassment in the workplace," *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 77 (1998), the record supports Dediol's assertion that he endured a pattern of name-calling of a half-dozen times daily and that it may have interfered with his pecuniary interests. Moreover, Clay's

10

No. 10-30767

behavior in threatening to beat up Dediol, "charging" at Dediol on August 29, removing his shirt, and stating to Dediol "You don't know who you are talking to. See these scars. I was shot and was in jail," underscore our conclusion that at the very least, there is a genuine issue of material fact on this claim. These allegations are for the trier of fact to resolve and summary judgment was granted in error on Dediol's claim of hostile work environment based on age.

## C.

Dediol's next discrimination claim is for hostile work environment based on religion. Dediol can establish he was harassed based on religion by proving, *inter alia*, that the harassment created a hostile or abusive working environment. *Harvill*, 433 F.3d at 434–35. To establish a prima facie case of harassment based on religion, a plaintiff must produce evidence that (1) he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on religion; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.* at 434.

Considering our standard of review and Dediol's allegations, summary judgment was granted in error. Here, Dediol has satisfied the first three prongs of religious harassment: that he was a member of a protected class, that he was subject to unwelcome harassment, and that the harassment was based on religion. The propriety of the district court's grant of summary judgment for Best Chevrolet turns on whether Dediol was subject to a hostile or abusive working environment.

Dediol complains that he was forced to work on July 4th in a manner that infringed on his right to exercise his religion freely. Moreover, Dediol alleges that Clay made a string of remarks that, taken together, satisfy his burden of production and the standard for summary judgment. For example, when Melady granted him permission to attend an event at his church, that permission was

then overruled by Clay in the following way: "You old mother******, you are not going over there tomorrow" and "if you go over there [I'll] fire your f*****g ass." When Dediol arrived early on the Fourth—between 7:20 a.m. and 8:00 a.m. versus 10:00 a.m. or 11:00 a.m. for the other employees—Dediol claims that Clay put his shoes on Dediol's desk and stated: "Do you see these shoes? Your God did not buy me these shoes. I bought these shoes." To this, Dediol evidently replied, "Okay," and did not press the matter further.

Dediol claims preventing him from service to his church under the guise of requiring him to be at work was pretext, because he was forced to come in early the next day—well before others. Dediol also complains that Clay admonished him to "Get your ass out on the floor." When Dediol replied that he was reading his Bible, Clay replied, "Get outside and catch a customer. I don't have anybody in the lot. Go get outside." The parties agree that Clay did not know that Dediol was reading his Bible when he first instructed Dediol out on the floor.

As we have said before, a "continuous pattern of much less severe incidents can create an actionable claim." *WC&M,* 496 F.3d at 400. This inverse relationship is present here. While there is no one "smoking gun" that establishes a hostile work environment based on religion, Dediol has pled enough facts to show a pattern of smaller instances. At this phase of the proceedings, Dediol has created a genuine issue of material fact that these comments were not "stray remarks, with no connection to an employment decision." *Scales v. Slater,* 181 F.3d 703, 712 (5th Cir. 1999). Dediol has pointed to certain instances of acrimony based on religion that, based on our standard of review, support our conclusion that the district court's grant of summary judgment on this issue is reversible error.

No. 10-30767

**D.**

Dediol's third and last basis for appeal is the district court's grant of summary judgment for Best Chevrolet on his claim of constructive discharge. To prove constructive discharge, a party must show that "a reasonable party in his shoes would have felt compelled to resign." *Benningfield v. City of Houston,* 157 F.3d 369, 378 (5th Cir. 1998). The claim requires a "greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* To determine if a reasonable employee would feel compelled to resign, courts consider the relevancy of the following events: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir. 2001).

Our review of the record yields a genuine issue of material fact on this issue, too. For example, in the eight-week span between the July 3rd incident and his resignation from Best Chevrolet, tensions escalated into a physical altercation in front of others, which precipitated Dediol's departure from Best Chevrolet. The record illustrates a difficult—and at times volatile—relationship Dediol shared with Clay. Unhappy in the Used Cars department, Dediol sought to maintain his employment with Best Chevrolet, but in a different department. When this request was rejected, the situation erupted, eventually compelling Dediol to resign. We conclude that in this case, these allegations survive summary judgment.

**III.**

No. 10-30767

For the reasons stated above, we REVERSE the district court's grant of summary judgment in favor of Best Chevrolet and REMAND for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.