[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15364
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-00845-RBD-DAB

ARMANDA COLES,

Plaintiff - Appellant,

versus

POST MASTER GENERAL
UNITED STATES POSTAL SERVICES,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 26, 2017)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Armanda Coles, a longtime United States Postal Service ("USPS")

employee, sued the Postmaster General under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-2 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, on race and age discrimination, retaliation, and hostile work environment theories. She asserted that the Postmaster discriminated against her by twice terminating her, urging her (but not her white or under-40 coworkers) to retire, giving her unfavorable work assignments, shouting at her, improperly searching her vehicle, investigating her absences, and warning her that her job assignment would be eliminated. The district court granted the Postmaster summary judgment as to each of Coles's claims. Having thoroughly reviewed the record, we affirm.

## I.    FACTUAL BACKGROUND

Coles, an African American woman over the age of forty, began working as a mail handler for USPS in 1986. Since 1990, she has worked at USPS's mid-Florida postal plant. Coles became eligible for retirement in or around 1995, after thirty years of federal service. USPS terminated Coles in 1999, ostensibly for taking medical leave without prior approval, and then again in 2005, for reasons that the record does not fully explain. Each time, Coles appealed to the Merit Systems Protection Board ("MSPB"), which reinstated her, and filed complaints with USPS's Equal Employment Opportunity Office ("EEO complaints") alleging

racial discrimination—one in 1999 and two in 2005.[1] The dispositions of these prior EEO complaints are not apparent from the record.

Shortly after Coles's 2005 reinstatement, USPS's Human Resources personnel sent her two notices informing her of her eligibility to retire. Coles requested that USPS stop sending her these notices unless it was sending them to all retirement-eligible employees, and the notices ceased. Several other USPS employees eligible for retirement, including a white man named Chip Shron, did not receive similar notices.

Within USPS, mail handlers bid for their preferred job assignments, which were meted out according to seniority. At all relevant times, Coles's bid assignment was "Spurs Cancellation/010/Other Duties As Assigned." Doc. 31-2 at 3.[2] The "010" designation refers to the plant's arrival and cancellation function. "Spurs" referred to "small parcels and rolls"; working the spurs belt entailed manually processing packages too big or awkwardly shaped to process by machine. Fernando Aguilar, manager of distribution operations at the mid-Florida plant and Coles's direct supervisor from 2009 to 2015, was responsible for assigning Coles other necessary duties. Most days, too little spurs processing work

---

[1] Whether Coles's second termination, as well as her associated MSPB appeal and one or both of her associated EEO complaints, occurred in 2004 or 2005 is not entirely clear from the record. We assume all relevant events occurred in 2005, but whether these events took place in 2004 or 2005 is immaterial to the disposition of Coles's claims.

[2] All citations to "Doc. _" refer to numbered entries on the district court docket.

had accumulated by the time Coles began her shift to justify having her perform spurs duties.  When too little spurs work was available, Aguilar would often assign Coles to work the culling belt, which involved interacting with a conveyor belt; Coles disliked culling belt duties due to her motion sickness.  All employees at Coles's plant occasionally were assigned culling belt duties when they did not have other work to do.  Coles was assigned to work the culling belt over 100 times.  On one occasion, she told Aguilar that she wished to file a grievance with her union steward over her culling belt assignments.  Aguilar began to shout at Coles, telling her he could make her work wherever he wanted.  Aguilar asserted that he was raising his voice to be heard over nearby machines, although he and Coles were in a quiet location within the plant.  According to Coles, Aguilar never shouted at a white, Hispanic, or under-40 mail handler.

In 2012, Dorothea Reda, Aguilar's manager and the USPS official who had made the decision to terminate Coles in 2005, received a notification from Human Resources that a USPS employee had been observed selling snacks and beverages at the plant, in violation of the Randolph-Sheppard Act, 20 U.S.C. § 107 *et seq.* The employee in question was described as a "stocky black woman," Doc. 31-5 at 3, who drove a silver Mercedes station wagon and frequently parked in a handicapped space.  No employee at the mid-Florida plant but Coles matched that description.  Reda requested that Aguilar investigate the matter.  Aguilar

4

confronted Coles, who denied the misconduct.  Reda and Aguilar located and searched a champagne or beige-colored Mercedes SUV, which belonged to Coles, in a handicapped parking space in the employee parking lot.  Reda and Aguilar, who had not received Coles's permission to search the vehicle, looked into the SUV's windows.  They denied searching inside the vehicle, but two witnesses observed a USPS manager open the trunk of Coles's SUV and then shut it.  No contraband was found in Coles's vehicle, and she was not found to have acted improperly.  No other mail handler's vehicle was searched.

USPS regulations require regular attendance of employees.  Coles was absent without excuse on four occasions within a 30-day period during May and June 2012.  Coles acknowledged her absences, but asserted that she had submitted paperwork to receive medical leave.  A week after Aguilar shouted at Coles, he administered an investigative interview questionnaire to Coles concerning her unscheduled absences.  Coles did not explain her absences to Aguilar, instead asserting her "right to remain silent."  She was not disciplined for her absences.

USPS's regional management decided to reorganize Florida mail processing operations.  Several months after the vehicle search incident, Coles's union president, Felix Rodriguez, informed Coles that Reda had told him Coles's bid assignment would be abolished.  Coles and several other mail handlers asked Aguilar whether the 010 operation would be moved to a different plant.  Aguilar

5

told them that to the best of his knowledge, the 010 operation would be relocated. The plant's entire 010 operation, consisting of about fifteen to thirty employees, ultimately was relocated to Orlando in 2013. Due to her seniority, however, Coles was able to select a new bid assignment at the plant.

Coles filed an EEO complaint, which resulted in a ruling favorable to the Postmaster. The Equal Employment Opportunity Commission affirmed and notified Coles that she had 90 days to file a suit in the district court. Coles then filed a complaint against the Postmaster in the district court, raising claims of disparate treatment, retaliation, and hostile work environment. The district court granted the Postmaster's motion for summary judgment as to all counts. Coles moved to alter or amend the judgment, arguing that the district court, in granting the Postmaster summary judgment on her retaliation claim, had erred in requiring her to establish a prima facie case and in applying too stringent a standard in determining whether she had suffered an adverse employment action. The district court rejected Coles's first argument but agreed that it had erred with respect to its adverse employment action analysis. It nonetheless declined to alter its judgment, concluding that even if Coles had established a prima facie case of retaliation, she had failed to show that the Postmaster's given reasons for these adverse actions against her were pretextual. Coles timely appealed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  We review *de novo* a district court's grant of summary judgment, viewing the record and drawing all reasonable inferences in the light most favorable to the non-movant.  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). "[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact."  *Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002).  We may affirm a district court's judgment on any ground that the record supports, even if the district court did not rely on or even consider that argument.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

A party must file a motion to alter or amend a judgment no later than 28 days after the entry of judgment.  Fed. R. Civ. P. 59(e).  We review a district court's decision on whether to alter or amend judgment for abuse of discretion. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1343 n.20 (11th Cir. 2010). "[T]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact.  A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to

the entry of judgment." *Id.* at 1344 (alterations and internal quotation marks omitted).

## III.    ANALYSIS

Seven distinct episodes involving Coles and USPS are relevant to the Title VII and ADEA analysis that follows:  the (1) vehicle search, (2) investigative interview, (3) culling belt assignments, (4) prior terminations, (5) retirement reminders, (6) shouting incident, and (7) bid elimination warning.

## A.    Coles Failed to Show She Suffered an Adverse Employment Action.

Coles argues the district court erred in granting summary judgment to the Postmaster as to her race- and age-based employment discrimination claims.  To establish a prima facie case of employment discrimination, a plaintiff must show she suffered an adverse employment action.  Coles argues that the Postmaster's search of her vehicle, investigative interview relating to her absences, and assignments of culling belt work, whether taken individually or collectively, were adverse employment actions.[3]  These acts, although viewed in the light most favorable to Coles, do not rise to that level.  The district court thus properly determined that Coles had not established her prima facie case.

---

[3] Coles does not argue that the prior terminations, retirement reminders, bid elimination warning, or shouting incident constituted race- or age-based discrimination, and so has abandoned those arguments.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

An employer may not "discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). "All personnel actions affecting employees . . . in the United States Postal Service" likewise "shall be made free from any discrimination based on race." *Id.* § 2000e-16(a). An employer may not "discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

We analyze race discrimination claims based on circumstantial evidence under the familiar *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To succeed, a plaintiff must first prove her prima facie case by showing that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside h[er] protected class or was treated less favorably than a similarly-situated individual outside h[er] protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003). Should the plaintiff succeed in making her prima facie case, "the burden of production shifts to the employer . . . to introduce evidence of some legitimate, nondiscriminatory reason for its employment decision." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir.

9

2013) (internal quotation marks omitted).  The plaintiff must then show the employer's given reason is pretextual.  *Id.*

We also use *McDonnell Douglas*'s framework to evaluate age discrimination claims based on circumstantial evidence.  *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  To prove her prima facie case of age discrimination, a plaintiff must show she was (1) "a member of the protected group of persons between the ages of forty and seventy;" (2) "subject to adverse employment action;" (3) replaced by or passed over for "a substantially younger person;" and (4) "qualified to do the job for which she was rejected."  *Id.* at 1359. The defendant can then offer a legitimate non-discriminatory reason for its action, which the plaintiff may then seek to rebut as pretextual.  *Id.* at 1361.

An "adverse employment action" under Title VII is "a serious and material change in the terms, conditions, or privileges of employment."  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001).  The ADEA's test for "adverse employment action" is the same.  *See Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1193-94 (11th Cir. 2016).  Although Title VII and the ADEA do "not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."  *Davis*, 245 F.3d at 1239.  "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling;

the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

The Postmaster's actions did not amount, individually or collectively, to an adverse employment action against Coles.[4] The one-time search of Coles's vehicle may have caused her personal distress, but it did not result in any disciplinary action against her or otherwise cause her to experience any "serious and material change in the terms, conditions, or privileges of [her] employment." *Davis*, 245 F.3d at 1239. Indeed, as Coles acknowledged during her deposition, the terms and conditions of her employment with USPS allowed Reda and Aguilar to inspect her vehicle without her consent. The search thus was consistent with the terms and conditions of her employment, not a change to them.

Nor did the investigative interview constitute adverse employment action. Coles faced no discipline arising out of the interview. Although the Postmaster placed the interview into Coles's personnel file, Coles offers no evidence beyond mere "speculati[on]," *id.*, that this adversely affected her position. Indeed, she

---

[4] In determining whether a plaintiff has made out a prima facie case at the summary judgment stage, we consider "the total weight" of the complained-of actions "collectively." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted). Coles argues the district court erred in failing to consider the Postmaster's behavior collectively. In fact, the district court, citing *Shannon*, determined that "[e]ven considering the [a]lleged [d]iscriminatory [a]cts collectively, . . . no reasonable jury could conclude that [Coles] suffered an adverse employment action." Doc. 35 at 6. Coles's contention that the district court erred in failing to consider the Postmaster's conduct collectively thus is meritless.

acknowledged during her deposition that the interview has had no adverse impact on her promotional opportunities.

Coles's culling belt assignments did not amount to adverse employment action either. Aguilar's undisputed testimony shows that all USPS employees were required to work the culling belt from time to time, that there often was too little accumulated spurs belt work at the start of Coles's shift for Coles to perform spurs duties, and that as a result Coles frequently had time to perform other duties. Coles conceded that there often was little spurs belt work for her to complete at the start of her shift. Her bid assignment, which included "Other Duties As Assigned," Doc. 31-2 at 3, contemplated that Coles might be assigned work beyond the spurs belt. She suggests that being required to work the culling belt violated her union agreement, but identifies no evidence as to this claim, much less evidence sufficient to create a genuine issue of material fact.

The vehicle search, investigative interview, and culling belt assignments, taken individually or collectively, were not adverse employment actions. As such, she has failed to establish a prima facie case of race- or age-based discrimination.

Coles argues that because the *McDonnell Douglas* framework "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case," *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), she was not required to show

12

that she suffered an adverse employment action to defeat summary judgment. Although a "plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case," and a "plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent," *id.*, we have never suggested that a plaintiff can survive summary judgment without any evidence that she experienced any adverse employment action at all. Allowing a plaintiff to go beyond the *McDonnell Douglas* framework to prove her employer's discriminatory intent does not abolish the requirement that the plaintiff have suffered an adverse employment action.

For these reasons, the district court did not err in granting the Postmaster summary judgment as to Coles's race- and age-based discrimination claims.[5]

## B.    Coles Waived Her Argument That the Postmaster's Actions Were a Pretext for Retaliation.

Coles argues that the district court erred in determining, with respect to her race- and age-based retaliation claims, that the Postmaster's given reasons for her actions were not pretextual. She failed to raise this argument before the district court, however, and offers no reason why we should excuse that failure. Coles has thus waived her pretext argument.

---

[5] Because we conclude that Coles failed to establish a prima facie case of race- or age-based employment discrimination, we need not consider whether the Postmaster's given reasons for taking actions against her were pretextual.

13

An employer may not discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  "The ADEA federal-sector provision was patterned directly after Title VII's federal-sector discrimination ban" and bars retaliation against federal employees "based on the filing of an age discrimination complaint."  *Gomez-Perez v. Potter*, 553 U.S. 474, 479, 487 (2008) (internal quotation marks omitted).  "The burden of proof in Title VII retaliation cases is governed by the framework established in *McDonnell Douglas*."  *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993).  "[T]o prevail, the plaintiff must first establish a prima facie case by showing (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action."  *Id.*  The defendant then "may come forward with legitimate reasons for the employment action to negate the inference of retaliation."  *Id.*  "[T]he plaintiff then bears the burden of proving . . . that the reasons offered by the defendant are pretextual."  *Id.*

The Postmaster argued in her motion for summary judgment that even if Coles could make out a prima facie case of race- or age-based retaliation, she had a legitimate, non-discriminatory reason for each challenged act, and Coles could not

14

establish pretext.  In her response to the Postmaster's motion, Coles laid out boilerplate law on pretext but did not argue that the Postmaster's explanations for her actions were a pretext for discrimination.  Nor did she raise this argument before the district court at any other time.  Coles abandoned her pretext argument in the district court by offering mere "passing references to it . . . without supporting arguments."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).  We "generally will not consider a legal issue or theory unless it was presented to the trial court."  *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360 (11th Cir. 1984).

We may exercise discretion to consider an abandoned argument under "certain exceptional circumstances," *id.*, but Coles has failed to show that any such exception applies here.  She was represented by counsel in the district court, a fact that weighs against allowing her to raise her pretext argument for the first time on appeal.  *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982).  Coles has thus abandoned the argument.  Because the district court's pretext determination was an independent ground for granting the Postmaster summary judgment on Coles's retaliation claims, we affirm.  *See Sapuppo*, 739 F.3d at 680 ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, [s]he is

15

deemed to have abandoned any challenge of that ground, and . . . the judgment is due to be affirmed.").

## C.    Coles Failed to Show She Experienced a Hostile Work Environment.

Coles argues that the district court erred in granting summary judgment to the Postmaster on her hostile work environment claims.  To show a hostile work environment under Title VII and the ADEA, a plaintiff must show she experienced harassment based on a protected characteristic.  Coles identified no evidence that the Postmaster's treatment of her was due to her race or age; indeed, the Postmaster furnished several legitimate reasons for her actions, which Coles failed to call into doubt.  The district court thus did not err in granting the Postmaster summary judgment on Coles's hostile work environment claims.

Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).  To make out a prima facie case for a hostile work environment claim, a Title VII plaintiff must demonstrate

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the

16

employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  While "Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex," it "does not prohibit harassment alone, however severe and pervasive."  *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301-02 (11th Cir. 2007).  To show disparate treatment based on a comparator, a plaintiff must identify an employee or employees "similarly situated in all relevant respects."  *Trask*, 822 F.3d at 1192.

We have assumed, but never decided, that hostile work environment claims are also cognizable under the ADEA.  *See EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1249 n.7 (11th Cir. 1997).  Several of our sister Circuits have held that such claims are viable,[6] while others have assumed their viability.[7]  Courts that recognize hostile work environment theories under the ADEA apply essentially "the same" analysis that applies to Title VII hostile work environment claims.  *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).  The Sixth Circuit, for example, has held that a plaintiff bringing a hostile work environment claim under the ADEA must show that

---

[6] *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996).

[7] *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005); *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999).

1. [she] is 40 years old or older;

2. [she] was subjected to harassment, either through words or actions, based on age;

3. [t]he harassment had the effect of unreasonably interfering with [her] work performance and creating an objectively intimidating, hostile, or offensive work environment; and

4. [t]here exists some basis for liability on the part of the employer.

*Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996). These elements are materially identical to those that a hostile work environment plaintiff must show under Title VII. *See Miller*, 277 F.3d at 1275. We assume, without deciding, that a plaintiff must show them to prevail on a hostile work environment theory under the ADEA. *Cf. Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (observing that hostile work environment claims are analyzed under the same framework whether brought under Title VII or 42 U.S.C. § 1981).

Coles asserts that seven episodes, taken individually or collectively, created a hostile work environment:  the (1) prior terminations, (2) retirement reminders, (3) shouting incident, (4) SUV search, (5) bid elimination warning, (6) investigative interview, and (7) culling belt assignments. She identifies no triable issue, however, as to whether the Postmaster acted "based on" her race or age. *Miller*, 277 F.3d at 1275; *Crawford*, 96 F.3d at 834.

Coles alleges that her prior terminations and retirement reminders were based on her race or age, but identifies no evidence to support these assertions.

18

The circumstances surrounding her prior terminations are unclear from the record, and Coles offers only "unsupported speculation" that the Postmaster terminated her—then sent her unwanted retirement reminders following her reinstatement—due to her race or age, which "does not meet [her] burden of producing some defense to a summary judgment motion." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (internal quotation marks omitted).

Coles likewise fails to show that Aguilar shouted at her based on her race or age. Even if Aguilar intended to demean and scare Coles, as she asserts, the only evidence that he did so due to her race or age is Coles's sworn testimony that Aguilar never shouted or yelled at white, Hispanic, or under-40 USPS employees. These employees are not valid comparators, as Coles has identified no individuals, much less evidence they were "similarly situated [to her] in all relevant respects." *Trask*, 822 F.3d at 1192. Coles thus shows no triable issue as to whether Aguilar's shouting created a hostile work environment in violation of Title VII.

With respect to the remaining incidents, the Postmaster gave legitimate reasons for each action she took, and Coles identifies no evidence rebutting them. As to the SUV search, undisputed evidence showed that Reda and Aguilar received notice that a USPS employee who fit Coles's description allegedly had been selling food and beverages at the plant in violation of federal law. The employee in question was described as a "stocky black woman," Doc. 31-5 at 3, who frequently

19

parked her silver Mercedes station wagon in a handicapped space; Coles testified that she drove a champagne or beige Mercedes SUV and usually parked in a handicapped space.  Reda's and Aguilar's investigation gave them a legitimate reason to search Coles's vehicle.[8]  Although Coles identified other mail handlers—a Hispanic woman who is younger than Coles and two Hispanic men—whose vehicles were not searched, they are not valid comparators because she identified no evidence that they were "similarly situated" to her "in all relevant respects." *Trask*, 822 F.3d at 1192.  Coles cites no other evidence to cast doubt on the Postmaster's legitimate explanation for the search of her SUV—she makes only conclusory allegations that Reda and Aguilar acted in retaliation, which create no genuine issue of material fact.  *See Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) ("[C]onclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." (internal quotation marks omitted)).

As to the warning that her bid would be abolished, undisputed evidence showed that the Postmaster transferred Coles's bid assignment to a different plant as part of a large-scale reorganization.  This reorganization gave the Postmaster a legitimate reason to inform Coles that her bid assignment might move to a different

---

[8] Although a genuine issue of fact exists as to whether Reda and Aguilar opened the SUV's window or trunk, that issue is immaterial to whether they had a legitimate reason for investigating Coles's vehicle.

plant.  Coles testified that she believed the Postmaster had instructed Rodriguez to tell her that her bid assignment would be abolished so as to induce her retirement, but such "unsupported speculation" does not show a genuine issue of material fact. *Cordoba*, 419 F.3d at 1181 (internal quotation marks omitted).

As to the investigative interview, undisputed evidence showed that Coles was absent without explanation on four occasions within a thirty-day period. Coles's unexcused absences gave the Postmaster a legitimate reason to administer an investigative interview questionnaire.  Although the evidence showed that Coles properly submitted paperwork to request medical leave, it does not show that the Postmaster had approved her request.

Finally, as to the culling belt assignments, undisputed evidence showed that Coles's bid assignment included "Other Duties As Assigned," that Aguilar was responsible for assigning Coles additional work, and that oftentimes too little spurs belt work had accumulated at the start of Coles's shift to justify having her perform spurs belt duties.  Aguilar testified that he would assign Coles culling belt duties when she could not perform spurs belt duties, and that all employees at the plant were required to work the culling belt from time to time.  Coles identifies no evidence that casts doubt on Aguilar's testimony.  Although Coles argues that her culling belt assignments denied her the benefit of her seniority, she cites no evidence that the assignments were based on her race or age.

21

For these reasons, Coles has failed to identify any genuine issue of material fact as to whether the Postmaster acted based on her age or race.  The district court thus did not err in granting the Postmaster summary judgment on Coles's Title VII and ADEA hostile work environment claims.

**D.    The District Court Did Not Err in Denying Coles's Motion to Alter the Judgment.**

Finally, Coles argues the district court erred in denying her motion to alter the judgment.  She identifies no "newly-discovered evidence or manifest errors of law or fact" that warrant reversing the district court's order.  *Jacobs*, 626 F.3d at 1327 (internal quotation marks omitted).  Coles moved to alter the judgment on the ground that the district court applied the wrong legal framework in determining that she had failed to make a prima facie case of retaliation.  But the district court denied Coles's motion on the ground that even if she had made a proper prima facie case, she had not shown that the Postmaster's stated reasons for acting were pretextual.  As we have already explained, Coles abandoned her challenge to the district court's pretext determination by failing to address the issue below.  Because we affirm the district court's judgment as to Coles's retaliation claims on the ground that she failed to show that the Postmaster's reasons were pretextual, Coles cannot show the district court abused its discretion in denying her motion to alter the judgment.  *Jacobs*, 626 F.3d at 1327.

22

## IV.    CONCLUSION

For the reasons set forth above, we affirm the district court's grant of

summary judgment to the Postmaster.

**AFFIRMED.**